***NOT FOR PUBLICATION***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DOUGLAS PERKINS,<br>Appellant,<br>v.<br>ADVANCE FUNDING, LLC, et al.,<br>Appellees. | Civil Action No. 20-15708 (FLW)<br>**OPINION** |

**WOLFSON, Chief Judge:**

After petitioning for Chapter 13 bankruptcy, Douglas Perkins ("Perkins") filed an Adversary Complaint against Advance Funding, LLC and its owner, Allan Talbert (together, "Advance Funding"). In his Adversary Complaint, Perkins alleges that several agreements he entered into with Advance Funding, through which he assigned an interest in settlement proceeds from a personal injury tort action, are void as a matter of public policy, violate the New Jersey Consumer Fraud Act, and that the amount of interest charged by the agreements exceeds New Jersey's civil usury laws. Based on an arbitration clause included in the agreements, the Bankruptcy Court lifted the Automatic Stay and compelled the parties to proceed in arbitration. The question on appeal is whether the parties were properly compelled to arbitrate. For the following reasons, the Court reverses and vacates the Bankruptcy Court's Orders compelling the parties to arbitrate the dispute and denying Perkins's motion for reconsideration.

## I. BACKGROUND

In August 2015, Perkins was at Whiting Beach at Water Avenue in the Borough of

Manasquan, New Jersey.  (Compl. ¶ 9, Bankr. Dkt. 20-1362, ECF No. 1.)  Perkins dove headfirst into the water when he struck a piling, causing serious, permanent injuries.  (*Id.* ¶ 10.)  As a result of his injuries, Perkins filed a tort action against the Borough of Manasquan in the Superior Court of New Jersey on August 4, 2017.  (*Id.* ¶ 11.)

On December 27, 2017, Perkins and Advance Funding entered into an agreement which assigned to Advance Funding an interest in settlement proceeds from Perkins's tort action in exchange for $6,000, through a Sale and Assignment Agreement.  (*Id.* ¶ 12.)  The December 27, 2017 Sale and Assignment Agreement called for a "monthly use fee" that, according to Perkins, served as a 36% annual interest rate on the $6,000, along with a $250 application fee and a $1,250 origination fee, for a total of $7,500.  (*Id.* ¶ 13.)  On April 4, 2018, Perkins and Advance Funding entered into a second Sale and Assignment Agreement, in which Advance Funding was again assigned an interest in settlement proceeds from the tort action for $6,000.  (*Id.* ¶ 14.)  The April 4, 2018 Sale and Assignment Agreement also called for a "monthly use fee" that served as a 36% annual interest rate on the $6,000, along with a $250 application fee and a $1,250 origination fee, for a total of $7,500.  (*Id.* ¶ 15.)  On June 8, 2018, Advance Funding was again assigned an interest in proceeds from the tort action, in exchange for $10,000 pursuant to a third Sale and Assignment Agreement.  (*Id.* ¶ 16.)  That Sale and Assignment Agreement applied a "monthly use fee" that served as a 36% annual interest rate on the $10,000, along with a $250 application fee, for a total of $10,250.  (*Id.* ¶ 17.)  On November 27, 2018, the parties entered into a fourth Sale and Assignment Agreement through which Advance Funding was assigned proceeds from the tort action in exchange for $10,000.  (*Id.* ¶ 18.)  The November 27, 2018 Sale and Assignment Agreement applied a "monthly use fee" that served as a 36% annual interest rate on the $10,000, along with a $500 application fee and a $1,000 origination fee, totaling $11,500.  (*Id.* ¶ 19.)  On

September 23, 2019, following a jury trial, an Order of Judgment was entered in Perkins's favor in the tort action, awarding him damages in the amount of $325,000. (*Id.* ¶ 20.) That Judgment is currently pending appeal. (*Id.* ¶ 21.)

Each of the Sale and Assignment Agreements entered into by Perkins and Advance Funding contains the same arbitration clause, which provides:

> Notwithstanding any other provision of this contract, at the sole and exclusive option of Advance Funding, any controversy or claim arising out of or relating to this contract, including without limitation the interpretation, validity, enforceability or breach thereof, shall be settled by final, binding arbitration administered by the American Arbitration Association (hereinafter referred to as "AAA") IN ACCORDANCE WITH ITS Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. The arbitrator shall be a practicing attorney or a retired judge licensed to practice in the State of New Jersey. The parties also agree that the AAA Optional Rules for Emergency Measures of Protection shall apply to the proceedings. The arbitrator shall award to the prevailing party, if any, as determined by the arbitrator, all of its costs and fees. "Cost and fees" mean all pre-award expenses of the arbitration, including the arbitrator's fees, administrative fees, travel expenses, out-of-pocket expenses such as copying and telephone, court costs, witness fees, and attorney fees. The award shall be in writing, shall be signed by the arbitrator, and shall include a statement regarding the reasons for the disposition of any claim. Advance Funding may exercise its sole and exclusive option to arbitrate at any time whatsoever, unless Advance Funding may exercise tis sole and exclusive option to arbitrate at any time whatsoever, unless Advance Funding has commenced litigation or interposed a counter claim in litigation that I have commenced. This option is not waived in the event that Advance Funding interposes an Answer in an action that I have commenced.

(*See id.*, Ex. B, at 6 ¶ 28; *id.*, Ex. C, at 6 ¶ 28; *id.*, Ex. D, at 6 ¶ 28; *id.*, Ex. E, at 6 ¶ 28.) The Sale and Assignment Agreements also contain an "Attorney Acknowledgement and Agreement," which states that "I am the attorney of record in the above-captioned case. I further certify that I have received a copy of and reviewed the Advance Funding Sale and Assignment Agreement, and

explained the terms to my client. This certification shall be deemed a material part of the Advance Funding Sale and Assignment Agreement." (*Id.*, Ex. B, at 2–3; *id.*, Ex. C, at 2–3; *id.*, Ex. D, at 2–3; *id.*, Ex. E, at 2–3.) Perkins's attorney in the tort action, Dean R. Maglione, Esq., only signed the Attorney Acknowledgment in the December 27, 2017 Sale and Assignment Agreement. (*Id.*, Ex. B, at 2–3; *id.*, Ex. C, at 2–3; *id.*, Ex. D, at 2–3; *id.*, Ex. E, at 2–3.)

On January 3, 2020, Perkins filed a Voluntary Petition for Individuals Filing for Bankruptcy jointly with his wife, Elizabeth Perkins. (*Id.* ¶ 23.) Shortly thereafter, an amended Schedule E/F was filed listing Advance Funding as a nonpriority unsecured creditor. (*Id.* ¶ 24.) On April 20, 2020, Advance Funding filed a Proof of Claim in the amount of $60,538.76 on the basis of a "personal loan funding personal injury lawsuit." (*Id.* ¶ 25.) The Proof of Claim purports to be secured by a lien on property and as a basis for perfection states, "assignment and lien on personal injury recovery." (*Id.* ¶ 26.)

On June 17, 2020, Perkins filed an Adversary Proceeding against Advance Funding seeking to void the four Sale and Assignment Agreements as against public policy, as exceeding New Jersey's civil usury limits, and as violative of the New Jersey Consumer Fraud Act. (*Id.* ¶¶ 27–34.) Shortly thereafter, on July 22, 2020, Advance Funding filed a Motion to Lift the Automatic Stay to Enforce Arbitration Contract Provisions and Stay Proceedings Pending Arbitration based on the arbitration provisions contained in the Sale and Assignment Agreements. (Mot., Bankr. Dkt. 20-1362, ECF No. 6.) Perkins objected to the motion on the grounds that (1) the arbitration provision is invalid because each of the Sale and Assignment Agreements is void as against public policy, and (2) the arbitration provision is unenforceable as it does not adequately define the rights being waived by the consumer. (Opp., Bank. Dkt. 20-1362, ECF No. 7.)

The Bankruptcy Court held oral argument on the motion on September 8, 2020. (*See* Tr.,

Bankr. Dkt. 20-1362, ECF No. 15.) Following argument from the parties, the Bankruptcy Court granted Advance Funding's motion. (*See id.* at 7:14–21.) First, addressing Perkins's argument that the arbitration clause did not adequately inform him that he was waiving his right to pursue relief through the court system, the court found that the arbitration provision "does not make clear to an average member of the public that the ultimate outcome is a waiver of the right to utilize the court system" and, therefore, "[t]he language of the sale and assignment agreement itself, is not sufficient to notice the waiver of rights." (*Id.* at 13:14–20. 14:19–20.) Nevertheless, the Bankruptcy Court determined that the arbitration provision was enforceable based on the Attorney Acknowledgement. Finally, the Bankruptcy Court addressed Perkins's argument that the arbitration clause is unenforceable because the Sale and Assignment Agreements, in their entireties, are void. (*Id.* 17:15–21.) The Bankruptcy Court determined the Sale and Assignment Agreements, as litigation funding agreements, were not clearly contrary to public policy. (*Id.* 18:10–17.) However, the Court declined to consider whether the Sale and Assignment Agreements were unenforceable for violating New Jersey's usury laws or the New Jersey Consumer Fraud Act because "the arbitrator is left to determine whether the contract itself is valid." (*Id.* at 18:18–23.) Relevant to Perkins's appeal, the Bankruptcy Court found that the Sale and Assignment Agreements were not contrary to public policy as, it determined, non-recourse litigation funding agreements are not illegal under New Jersey law. (*See id.* at 17:15–19:17.)

On September 22, 2020, Perkins filed a motion for reconsideration of the Bankruptcy Court's order compelling arbitration. (Bankr. Dkt. 20-1362, ECF No. 13.) In that motion, Perkins provided a certification in which he asserted that Mr. Maglione did not explain to him the terms of the Sales and Assignment Agreements and, further, did not discuss the arbitration clause with him. (*Id.*) In that regard, Perkins challenged the Bankruptcy Court's finding that the Attorney

Acknowledgment cured the deficiencies of the arbitration clause. (*Id.*) Following oral argument, the Bankruptcy Court denied the motion for reconsideration because Perkins failed to raise that argument on the motion to compel. This appeal followed.

## II.   DISCUSSION

This Court has jurisdiction under 28 U.S.C. § 158(a). The Court reviews a "bankruptcy court's legal determinations *de novo*, its factual findings for clear error and its exercise of discretion for abuse thereof." *Interface Grp.-Nevada v. Trans World Airlines, Inc.*, 145 F.3d 124, 131 (3d Cir. 1997). On appeal, Perkins raises the following issues:

> 1.   The Bankruptcy Court erred in ruling contrary to New Jersey law, which holds that an agreement assigning an interest in proceeds of a claim for personal injuries prior to judgment is unenforceable and void as against public policy.
>
> 2.   The Bankruptcy Court erred procedurally in making a determination that the agreement at issue did not violate public policy in a collateral hearing on the Appellee's Motion to Lift the Automatic Stay to Enforce Arbitration before giving the Appellant the opportunity to litigate the issue in the Adversary Proceeding pursuant to Count I of the Complaint.
>
> 3.   The Bankruptcy Court erred by lifting the automatic stay to enforce arbitration when the arbitration clause itself is deficient and unenforceable pursuant to *Atalese v. U.S. Legal Services Group, L.P.*, 219 N.J. 430 (2014).

(Opening Br., at 4.)[1]

---

[1]   Perkins further argues that "[t]he Bankruptcy Court erred by imputing knowledge onto the Appellant to cure legal deficiencies of an arbitration clause by way of an attorney acknowledgment clause that does nothing more than affirm the terms of an unenforceable arbitration clause" and that "[t]he Bankruptcy Court improperly shifted the burden of proof to the Appellant by requiring the Appellant to produce evidence to rebut an attorney acknowledgment clause that simply affirmed the Appellant's understanding of an unequivocally deficient arbitration clause." (Opening Br., at 4.) Advance Funding contends, however, that the Court should not consider these arguments as they were not raised before the Bankruptcy Court. I need not resolve this issue because, as discussed *supra*, I find that the arbitration clause is not enforceable under *Atalese*.

I begin with whether the Bankruptcy Court erred in finding that the arbitration clause set forth in the Sale and Assignment Agreements is enforceable. The question of whether the Bankruptcy Court erred in compelling arbitration is one of law and, thus, the Court's review is *de novo*. *See Singh v. Uber Techs. Inc.*, 939 F.3d 210, 217 (3d Cir. 2019) (noting that review of order compelling arbitration is *de novo*).

The Federal Arbitration Act ("FAA") "'creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate.'" *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 179 (3d Cir. 1999) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983)). Congress designed the FAA "'to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts.'" *Beery v. Quest Diagnostics, Inc.*, 953 F. Supp. 2d 531, 536-37 (D.N.J. 2013) (quoting *Gilmer v. Interstate Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)). As such, the FAA provides that contracts containing arbitration clauses shall be binding, allows for the stay of federal court proceedings in any matter subject to arbitration, and permits both federal and state courts to compel arbitration if one party has failed to comply with an agreement to arbitrate. *See* 9 U.S.C. §§ 2-4. Together, "those provisions [of the FAA] 'manifest a liberal policy favoring [the enforcement] of arbitration agreements.'" *Beery*, 953 F. Supp. 2d at 537 (quoting *Gilmer*, 500 U.S. at 24). To that end, "'as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Id*. (quoting *Mercury Constr. Corp.*, 460 U.S. at 24-25).

Although federal law presumptively favors the enforcement of arbitration agreements, a district court must affirmatively answer the following questions when presented with a motion to

compel arbitration pursuant to Section 4 of the FAA: (1) whether the parties entered into a valid arbitration agreement; and (2) whether the dispute at issue falls within the scope of the arbitration agreement. *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009). Federal courts apply applicable state contract law in evaluating whether a valid arbitration agreement exists. *Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 289 (3d Cir. 2017). When "applying the relevant state contract law, a court may also hold that an agreement to arbitrate is 'unenforceable based on a generally applicable contractual defense, such as unconscionability.'" *Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 276 (3d Cir. 2004) (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

Under New Jersey law, an agreement to arbitrate, like any other contract, "must be the product of mutual assent, as determined under customary principles of contract law." *James v. Glob. TelLink Corp.*, 852 F.3d 262, 265 (3d Cir. 2017) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). "[I]f parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract." *Crawford v. Compass Grp. USA*, No. 14-2545, 2015 WL 1006389, at *3 (D.N.J. Mar. 6, 2015). To manifest assent, "an offeree must provide 'unqualified acceptance,' which can be express or implied by conduct." *James*, 852 F.3d at 265; *see also Fernandez v. Primelending*, No. 20-31, 2020 WL 6042119, at *4 (D.N.J. Oct. 9, 2020). To meet this mutual assent requirement, arbitration clauses must clearly and unambiguously indicate "that a consumer is choosing to arbitrate disputes rather than have them resolved in a court of law." *Atalese v. U.S. Legal Servs. Grp., L.C.*, 219 N.J. 430, 447 (2014).

Here, the Bankruptcy Court found that the arbitration clause does not include sufficient language to indicate to the consumer that he was waiving his right to sue in a court of law. (*See* Tr., at 14:19–20.) I agree with that assessment. While "[n]o particular form of words is necessary

to accomplish a clear and unambiguous waiver of rights," an arbitration clause must explain to the consumer that "arbitration is a waiver of the right to bring suit in a judicial forum." *Atalese*, 219 N.J. at 444. In other words, the arbitration clause must make clear "that by choosing arbitration one gives up the 'time-honored right to sue.'" *Id.* at 445. Here, the arbitration clause contains no notice to the consumer that he is waiving his right to seek judicial relief. Rather, the clause provides that at the sole and exclusive option of Advance funding, any claim arising out of the Sale and Assignment Agreements "shall be settled by final binding arbitration," and sets forth certain procedural requirements for such arbitration. At no point, however, does the clause "explain what arbitration is" or "indicate how arbitration is different from a proceeding in a court of law." *Atalese*, 219 N.J. at 446. That is plainly insufficient under *Atalese*.

Nevertheless, the Bankruptcy Court determined that the Attorney Acknowledgement cured any deficiency of the arbitration clause because it demonstrated that Perkins, through his attorney, understood "the rights that he was waiving by signing the sale and assignment agreement as to . . . agreeing to submit to arbitration." (Tr., at 14:19–25.) The Bankruptcy Court's determination in this regard, however, was contrary to New Jersey law. The New Jersey Supreme Court has consistently held that essential to the determination of whether an *individual* knowingly agreed to arbitration is the existence of "[a]n unambiguous writing." *Garfinkel v. Morristown Obstertrics & Gynecology Assocs., P.A.*, 168 N.J. 124, 136 (2001); *Marchak v. Claridge Commons, Inc.*, 134 N.J. 275, 282–83 (1993); *see also Atalese*, 219 N.J. at 446–47 ("The clause here has none of the language our courts have found satisfactory in upholding arbitration provisions—clear and unambiguous language that the plaintiff is waiving her right to sue or go to court to secure relief."). In that connection, the fact that an individual was represented by counsel in entering into an agreement that contains an arbitration clause cannot, on its own, "cure the inadequacy of [a]

contractual arbitration provision." *Dispenziere v. Kushner Cos.*, 438 N.J. Super. 11, 19–20 (App. Div. 2014); *Itzhakov v. Segal*, No. A-2619-17T4, 2019 WL 4050104, at *4 (N.J. Super. Ct. App. Div. Aug. 28. 2019) ("[E]ven a sophisticated party, or one represented by counsel, will not be deemed to waive his or her rights – whether constitutional, statutory, or common-law – without clear and unambiguous language."); *Estate of Noyes v. Morano*, No. A-1665-17T3, 2019 WL 149521, at *5 (N.J. Super. Ct. App. Div. Jan 8. 2019) (observing that "the plaintiff's 'level of sophistication' or representation by counsel does not negate *Atalese*'s requirement that a court find he 'actually intended to waive his statutory rights'").

For example, in *Dispenziere*, the plaintiffs were purchasers of condominium units in a real estate development that sued the developer for, *inter alia*, breach of contract and violations of the New Jersey Consumer Fraud Act. *Id.* at 13–15. The real estate developer moved to compel arbitration based on an arbitration clause set forth in each purchase agreement. *Id.* The Appellate Division reversed the trial court's decision granting the motion to compel arbitration because, it determined, the arbitration provision "was devoid of any language that would inform unit buyers such as plaintiffs that they were waiving their right to seek relief in a court of law." *Id.* at 18. In so holding, the Appellate Division rejected the "defendants' contention that the presence of counsel during the real estate transaction suffices to cure the inadequacy of the contractual arbitration provision." *Id.* at 19.

Similarly, here, the arbitration clause fails to meet the basic requirements of *Atalese* as it does not inform individuals, like Perkins, "that they are waiving their right to seek relief in a court of law." *Id.* at 18. In that connection, the fact that Perkins was represented by counsel and that

his counsel purportedly reviewed the terms of the agreements with him,[2] does not negate the fact that the arbitration clause is deficient as it does not contain "clear and unambiguous language that [Perkins] is waiving [his] right to sue or go to court to secure relief." *Atalese*, 219 N.J. at 446. As such, the Bankruptcy Court erred in finding that the Attorney Acknowledgment indicated Perkins's knowing and voluntary assent to the arbitration clause. Thus, because I find that the arbitration clause set forth in the Sale and Assignment Agreements is unenforceable, I reverse the Bankruptcy Court's grant of Advance Funding's motion to compel arbitration.

Having determined that the Bankruptcy Court erred in compelling arbitration, I further find that the Bankruptcy Court's consideration of whether the Sale and Assignment Agreements are void as against public policy was undertaken in error. As discussed above, the arbitration clause is unenforceable under New Jersey law. As such, the Bankruptcy Court did not need to reach Perkins's argument that, even if the arbitration clause were found to be enforceable, the parties should not be compelled to arbitration because the Sale and Assignment Agreements, themselves, are void. Moreover, even if the arbitration clause were enforceable, the Bankruptcy Court should not have reached the issue of whether the Sale and Assignment Agreements, as a whole, are valid. The Supreme Court has determined that challenges to a contract's validity are reserved for the arbitrator. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1, 449 (2006)

---

[2]  In support of his motion for reconsideration, Perkins submitted a certification in which he stated that Mr. Maglione did not explain the Sale and Assignment Agreements to him, nor did he tell Perkins that any claim arising from the agreement would be subject to arbitration. (Bankr. Dkt. 20-1362, ECF No. 13-1, ¶ 2.) In response, Advance Funding submitted a certification from Mr. Maglione contesting Perkins's version of events. (Bankr. Dkt. 20-1362, ECF No. 16.) The Court, however, need not consider these certifications to resolve this appeal. As set forth above, the language of the arbitration clause is determinative of whether Perkins's claims against Advance Funding are subject to arbitration. That is, because the arbitration clause fails to set out in clear and unambiguous language that Perkins waived his right to seek relief in a court of law, it is of no moment whether his counsel properly advised him as to the effect of the clause.

("[R]egardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator."); *SBRMCOA, LLC v. Bayside Resort, Inc.*, 707 F.3d 267, 715–16 (3d Cir. 2013) ("[T]he relevant distinction is between challenges to a contract's validity, which are arbitrable, and challenges to a contract's formation, which are generally not."). Here, if the parties were required to arbitrate their dispute, resolution of Perkins's challenge to the Sale and Assignment Agreements on public policy grounds would be reserved for the arbitrator. Thus, the Bankruptcy Court's inquiry should have stopped at its finding that the arbitration clause was enforceable. Accordingly, I will also vacate the portion of the Bankruptcy Court's decision in which the court held that the Sale and Assignment Agreements are not void as against public policy. On remand, when the merits of the Adversary Complaint are presented to the Bankruptcy Court for consideration, the Bankruptcy Court may revisit its holding in that regard when it considers the merits of Plaintiff's claims that the Sale and Assignment Agreements violate the New Jersey Consumer Fraud Act and New Jersey's usury laws. Given my finding that the Bankruptcy Court should not have reached the merits of Perkins's claim, I decline to address whether the Sale and Assignment Agreements are void as against public policy.

## III.   CONCLUSION

For the foregoing reasons, the Bankruptcy Court's Orders compelling the parties to arbitration and denying Perkins's motion for reconsideration are reversed and vacated. This matter is remanded to the Bankruptcy Court for further proceedings consistent with this Opinion.

DATED: September 7, 2021                                              /s/ Freda L. Wolfson
                                                                      Freda L. Wolfson
                                                                      U.S. Chief District Judge